UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

EUGENE A. SCURLOCK,                 )
                                    )
            Plaintiff,              )
                                    )
      v.                            )          No. 4:20-CV-01614-SPM
                                    )
MISSOURI HOUSING DEVELOPMENT        )
COMMISSION,                         )
                                    )
            Defendant.              )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss (Doc. 14) and Plaintiff's Motion and Default Judgment (Doc. 18). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 13). For the following reasons, Defendant's motion to dismiss will be granted, and Plaintiff's motion for summary judgment and default judgment will be denied.

## I.    FACTUAL BACKGROUND[1]

Plaintiff is an African-American individual who was employed by the Missouri Housing Development Commission from December 23, 2010 until August 23, 2019. His last position was Accountant II, and his last supervisor was Scott Hanak. Plaintiff alleges generally that Hanak and other individuals subjected Plaintiff to various adverse actions on the basis of his race, including

---

[1] These facts are taken from Plaintiff's complaint and the EEOC dismissal attached as an exhibit to the complaint. In addressing a motion under Rule 12(b)(6), "'documents attached to or incorporated within a complaint are considered part of the pleadings, and courts may look at such documents for all purposes, including to determine whether a plaintiff has stated a plausible claim.'" *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 769 (8th Cir.2012) (quoting *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459-60 (8th Cir. 2010)).

harassment, denial of promotions, bullying, and retaliation for complaining of race discrimination. Plaintiff alleges that the harassment and discriminatory actions by Hanak and others have been continuous and ongoing throughout his employment history with MHDC, and that he was stressed, exhausted, and humiliated from the repetitive and continuous negative environment. He further alleges that MHDC has a track record of not promoting African-Americans or people of color to positions in the St. Louis Office. Plaintiff's specific factual allegations are below.

On December 14, 2017, Plaintiff applied for an Accounting Specialist position. He was already performing many of the duties of the position, he was the most qualified person for the position, and he was told to apply for the position. MHDC did not fill the position, and Plaintiff continued to carry out many of its duties until his discharge. When Plaintiff asked why the position had not been filled, they did not have a valid explanation. Plaintiff at some point came to find out that Hanak had wanted to fill the position with a white candidate from a different department; that person had been disciplined in the past for racist remarks.

On February 13, 2018, Plaintiff applied for an Accounting Operations Manager position. He met all of the qualifications and was one of the most qualified candidates inside the organization, but they filled the position with a white accountant from outside the organization. He was never provided with any explanation for why he did not get the job.

Plaintiff alleges  generally that there were other positions he applied for in the organization and was well qualified for, but that he was not hired because of race discrimination and that most positions went to white co-workers. He does not allege any additional specific instances.

On Friday, August 9, 2019, at around 2:00 p.m., Plaintiff sent an email to an executive director and a deputy executive director ("the executive directors"), telling them that Hanak had just harassed him and made him leave work earlier that day. Plaintiff alleges that he explained the

situation to the directors as follows:

> [Hanak] made me leave work based on disputes we had earlier about some processes of AFS reviews and Operating Reserves he said he was going to process while [Plaintiff] was on vacation and items he was going to handle because he wanted me to start training with a fellow co-worker and himself on what we call Surplus Cash and Distribution Request Reviews and when that [sic] he got back from his vacation he didn't want me working on any other reviews but those because the person who was handling those transactions was no longer there and he was assigning me extra duties mind you without pay.

Complaint, at p. 9. Plaintiff also reported that Hanak came to his desk and said he was sending Plaintiff home to think about his actions from earlier. Plaintiff asked what actions Hanak was referring to and asked whether human resources and the "higher ups" were aware of it. Hanak replied that Plaintiff needed to leave now. Plaintiff asked to get his possessions and contact human resources. Hanak said no, got another white supervisor, and forcefully told Plaintiff to leave now. As Plaintiff was leaving, Plaintiff told them they were violating his right to communicate with human resources.

At around 4:00 p.m. on the same day, Plaintiff sent an email to the Acting Human Resource Director, giving his two weeks' notice that he was resigning from MHDC due to a hostile work environment and harassment by Hanak. Plaintiff later requested medical leave up through August 23, 2019. On Monday, August 12, 2019, Plaintiff sent another email to the executive directors and the Director of Finance, stating that he was resigning from MHDC because of continuous harassment and discrimination by Hanak and questionable items that Hanak had Plaintiff reviewing that were "against MHD policies, federal, and state laws about review that haven't taken place now and in the past that he made [Plaintiff] close out and several other unethical actions he placed on [Plaintiff]." Compl, at p. 10. Plaintiff also indicated in the email that Hanak was doing favors for properties management and wanted Plaintiff "to process their Operating Reserves that he know [sic] I have already denied because they didn't have the proper documents for payment

distributions. . . ." *Id.* Plaintiff did not receive any response. On Wednesday, August 14, 2019, Plaintiff received a letter at home, dated August 12, 2019, from the Acting Human Resource Director, stating that MHDC had received his resignation effective August 23, 2019, and that his request for medical leave had been approved. The letter did not mention any allegations of harassment, discrimination, or other communications by Plaintiff. On August 13, 2019, Plaintiff's access to his work email was cut off.

On June 4, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that MHDC discriminated against him based on his race and retaliated against him.

## II.    DISCUSSION

Plaintiff brings this case pursuant to Title VII of the 1964 Civil Rights Act, as amended, which prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2(a)(1), and from discriminating against an employee who "has opposed any practice made an unlawful employment practice by this subchapter," § 2000e–3(a).[2] Although Plaintiff does not explicitly set forth distinct claims in his complaint, he appears to be asserting claims that Defendant discriminated against him on the basis of race by failing to promote him, by causing him to experience a hostile work environment, and by constructively discharging him. Plaintiff also alleges that he was retaliated against for opposing practices made unlawful under Title VII.

---

[2] Title VII's retaliation provision also prohibits discrimination against  an employee who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). However, Plaintiff does not allege that he engaged in any such conduct while employed by Defendant.

4

Defendant has moved to dismiss each of Plaintiff's claims, and Plaintiff has moved for summary and default judgment. The Court considers each motion in turn.

### A.  Defendant's Motion to Dismiss

#### 1.  Legal Standard

 "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint "does not need detailed factual allegations" to survive a motion to dismiss, but it must contain factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (2007). When ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept as true all of the factual allegations in the complaint, though it need not accept the legal conclusions. *Iqbal*, 556 U.S. at 678. The Court must make "all reasonable inferences in favor of the nonmoving party." *Usenko v. MEMC LLC*, 926 F.3d 468, 472 (8th Cir. 2019). Additionally, "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008).

It is well established that in a Title VII case, a plaintiff is not required to plead facts establishing a prima facie case of employment discrimination. *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-512 (2002)). "However, 'elements of the prima facie case are [not] irrelevant to a plausibility determination in

a discrimination suit.'" *Id.* (quoting *Rodriguez–Reyes v. Molina–Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013)). "Instead, such 'elements are part of the background against which a plausibility determination should be made.'" *Id.* "In summary, 'the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim.'" *Id.*

In applying the above principles, the Court must construe Plaintiff's pro se complaint liberally. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). However, a pro se plaintiff "still must allege sufficient facts to support the claims advanced," and the Court will not supply additional facts or construct a legal theory for a plaintiff that assumes facts that have not been pleaded. *Id.*

The Court will consider each of Plaintiff's claims separately.

### 2. *Failure to Promote Claims*

Defendant first argues that Plaintiff's failure to promote claims should be dismissed as untimely, because the alleged discriminatory conduct occurred more than 300 days before Plaintiff filed his charge of discrimination with the EEOC.[3] "Under Title VII, an aggrieved party must file an EEOC complaint within 180 days following the alleged unlawful employment action," but "[t]he filing deadline is extended to 300 days in cases where the employee first initiates proceedings with a state or local agency." *Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 987 (8th Cir. 2003) (citing 42 U.S.C. § 2000e–5(e)). The parties appear to agree that the 300-day deadline applies here. The clock begins to run on the date "the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). "[E]ach discrete discriminatory act starts a new

---

[3] The Eighth Circuit has recognized that "when it 'appears from the face of the complaint itself that the limitation period has run,' a limitations defense may properly be asserted through a Rule 12(b)(6) motion to dismiss." *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004) (quoting *Wycoff v. Menke*, 773 F.2d 983, 984-85 (8th Cir. 1985)).

clock for filing charges alleging that act. The charge, therefore, must be filed within the 180– or 300–day time period after the discrete discriminatory act occurred." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" are "not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113-14. *See also Tademe*, 328 F.3d at 987-88 (applying *Morgan* and holding that a failure to promote claim was untimely even though it had consequences felt later and even though a related claim of salary discrimination was not untimely).

Plaintiff filed his charge of discrimination on June 4, 2020. Thus, any claims based on discrete acts that occurred prior to August 9, 2019, are time-barred.[4] Here, the only two failure-to-promote incidents described in Plaintiff's complaint occurred in December of 2017 and February of 2018. Although Plaintiff alleges later incidents as well, for which he apparently did file timely charges, those allegations do not affect the analysis of whether the failure to promote claim is timely. Because the failure to promote incidents described in the complaint were discrete acts that occurred more than 300 days before the EEOC charge was filed, any Title VII claims based on those incidents are time-barred. These claims will be dismissed with prejudice.

### 3.   Hostile Work Environment Claim

Defendant next argues that Plaintiff has failed to state a hostile work environment claim.. To establish a hostile work environment claim under Title VII, a plaintiff must show that: "(1) he is a member of a protected class; (2) he was exposed to unwelcome harassment; (3) the harassment was based on a protected characteristic of the plaintiff; (4) the harassment affected a term,

---

[4] Plaintiff correctly points out that Defendant misstated the date of the charge of discrimination as "June 6, 2020" in its brief. However, that misstatement does not affect the analysis of the failure to promote claims, as the incidents giving rise to those claims occurred more than 300 days prior to either date.

condition, or privilege of employment; and (5) the employer knew or should have known about the harassing behavior, but failed to take proper action to alleviate it." *Arraleh v. Cty. of Ramsey*, 461 F.3d 967, 978 (8th Cir. 2006) (citations omitted). Title VII is violated only "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1038 (8th Cir. 2005) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

As Defendant argues, Plaintiff has not alleged facts to suggest a connection between any of the allegedly harassing conduct he experienced and any protected characteristic. "[F]or harassing conduct to constitute race discrimination, it must be determined that the harasser's actions were taken based on the plaintiff's race." *Von Bokel v. McHugh*, No. 4:13-CV-2517 CAS, 2015 WL 357081, at *8 (E.D. Mo. Jan. 27, 2015) (citing *Singletary v. Missouri Dep't of Corr.*, 423 F.3d 886, 892 (8th Cir.2005)). Although Plaintiff makes the conclusory allegation that he was subjected to harassment and bullying by Hanak and others "on the basis of [his] race," the descriptions of the relevant incidents in his complaint contain no facts to suggest the harassment was based on race. Plaintiff alleges that on August 9, 2019, Hanak harassed him and forcefully told him to leave work, and Plaintiff reported to the executive directors that day that the harassment was related to various work matters and disputes. There is nothing in the complaint to suggest any connection between Hanak's behavior and Plaintiff's race.

In addition, Plaintiff has not alleged facts sufficient to suggest that the conduct of Hanak or others was sufficiently severe or pervasive to constitute a hostile work environment under Title VII. "A hostile work environment 'is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment

and create an abusive working environment' as viewed objectively by a reasonable person."
*Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 618 (8th Cir. 2007) (quoting *Tademe*,
328 F.3d at 991. "To be actionable, the conduct complained of must be extreme in nature and not
merely rude or unpleasant." *Id.* (quoting *Nitsche v. CEO of Osage Valley Elec. Coop.*, 446 F.3d
841, 846 (8th Cir. 2006)). "Allegations of a few isolated or sporadic incidents will not suffice;
rather, the plaintiff must demonstrate the alleged harassment was 'so intimidating, offensive, or
hostile that it poisoned the work environment.'" *Id.* "All of the circumstances are relevant,
including 'the frequency of the discriminatory conduct; its severity; whether it is physically
threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes
with an employee's work performance.'" *Malone v. Ameren UE*, 646 F.3d 512, 517 (8th Cir. 2011)
(quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Here, Plaintiff has not alleged facts sufficient to plausibly suggest the existence of a hostile
work environment. Although Plaintiff makes the vague and conclusory allegation that Hanak and
others engaged in continuous and ongoing harassment and discrimination throughout his
employment, he only alleges facts related to a single incident: the interaction on August 9, 2019,
in which Hanak forcefully made him leave work based on disputes about specific work-related
issues and refused to let him talk to Human Resources before leaving. Although this interaction
may have been very unpleasant, it appears to have been an isolated incident; there are no facts
alleged to suggest that Plaintiff experienced harassment that was so frequent, physically
threatening, humiliating, or hostile that it poisoned the work environment or created an
environment that created would be considered abusive when viewed objectively by a reasonable
person.

For all of the above reasons, even when the Court accepts as true all of the factual

allegations in the complaint and views the complaint liberally, the Court finds that Plaintiff has not alleged sufficient facts to suggest that Plaintiff has a plausible claim of a hostile work environment based on race. Thus, Plaintiff's hostile work environment claim will be dismissed, without prejudice.

### 4.  *Constructive Discharge Claim*

Defendant next argues that Plaintiff has failed to state a claim of race discrimination resulting in constructive discharge. To establish a prima facie claim of race discrimination in violation of Title VII, Plaintiff must show "(1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)." *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853-54 (8th Cir. 2012) (quoting *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010)). Here, the adverse employment action Plaintiff alleges is a constructive discharge.

Plaintiff has failed to plead facts sufficient to plausibly suggest either that he was constructively discharged or that there are circumstances that give rise to an inference of discrimination. To show constructive discharge, a plaintiff must show that "(1) a reasonable person in [his] situation would find the working conditions intolerable, and (2) the employer intended to force [him] to quit." *Rester v. Stephens Media, LLC*, 739 F.3d 1127, 1132 (8th Cir. 2014) (quoting *Wilkie v. Dep't of Health & Human Servs.*, 638 F.3d 944, 954–55 (8th Cir. 2011)). Generally, a plaintiff bears a higher burden in attempting to prove constructive discharge than in attempting to prove a hostile work environment, and allegations that are insufficient to show a hostile work environment will not show constructive discharge. *See O'Brien v. Dep't of Agric.*, 532 F.3d 805, 811 (8th Cir. 2008) ("Peterson premises her constructive discharge claim on the same allegations

we found insufficient to establish a hostile work environment. As such, her claim fails."). Additionally, the Eighth Circuit has "consistently recognized that an employee is not constructively discharged if [he] 'quits without giving [his] employer a reasonable chance to work out a problem.'" *Blake v. MJ Optical, Inc.*, 870 F.3d 820, 826 (8th Cir. 2017) (quoting *Trierweiler v. Wells Fargo Bank*, 639 F.3d 456, 460 (8th Cir. 2011).

As discussed above with respect to the hostile work environment, Plaintiff has not alleged sufficient facts to plausibly suggest the existence of work conditions that a reasonable person would find intolerable. The harassment he alleges occurred on a single day and does not appear to have been particularly severe. Additionally, Plaintiff alleges no facts that that suggest that his employer intended to force him to quit. Plaintiff also alleges no facts to suggest that Plaintiff gave Defendant any reasonable chance to work out the problem; instead, the facts alleged suggest that Plaintiff emailed the executive directors to report the harassment on the day it occurred and then resigned two hours later, without any apparent communication in the interim. Finally, Plaintiff has not alleged any facts to support an inference that his alleged constructive discharge was based on race discrimination. As discussed above, the facts Plaintiff alleges related to his disputes with Hanak suggest that those disputes related to work matters, and there is nothing in the complaint to suggest that they were related to Plaintiff's race.

Because Plaintiff has failed to allege facts sufficient to plausibly suggest that he was constructively discharged based on race discrimination, the Court will dismiss the constructive discharge claim without prejudice.

### 5. *Retaliation Claim*

Defendant next argues that Plaintiff has failed to state a retaliation claim. Title VII's anti-retaliation "prohibits an employer from discriminating against an employee who 'has opposed any

practice made an unlawful employment practice by this subchapter.'" *Barker v. Missouri Dep't of Corr.*, 513 F.3d 831, 834 (8th Cir. 2008) (internal quotation marks omitted) (quoting 42 U.S.C. § 2000e-3(a)). It is interpreted broadly, "to encompass actions that oppose employment actions that are not unlawful, as long as the employee acted in a good faith, objectively reasonable belief that the practices were unlawful." *Id.* (internal quotation marks omitted). To establish a retaliation claim, an employee must show that "(1) [he] engaged in protected conduct; (2) [he] suffered a materially adverse employment action; and (3) the adverse action was causally linked to the protected conduct." *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013) (citing *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011)). The employee must also show "retaliation [was] the 'but for' cause of the adverse employment action." *Id.* (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 351-52 (2013)). *Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804–05 (8th Cir. 2013)*.* "In the retaliation context, a materially adverse action is one that 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Recio v. Creighton Univ.*, 521 F.3d 934, 940 (8th Cir.2008) (quotation omitted).

The Court agrees with Defendant that Plaintiff has not alleged facts that plausibly suggest that Defendant retaliated against Plaintiff. It appears that the adverse employment action Plaintiff alleges is constructive discharge, and the Court has already found that he has not adequately pleaded that he was constructively discharged. Moreover, even assuming that Plaintiff could show either constructive discharge or some other adverse employment action prior to his resignation, [5]

---

[5] The latest possible adverse employment action Plaintiff might be alleging occurred when he sent the email containing his notice of resignation on August 9, 2019. After Plaintiff sent that email, the only events that occurred were the approval of his leave request and the post-resignation cutting off of his email access, neither of which are actions that might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

he has not alleged that he engaged in any protected conduct that could possibly have been the but-for cause of Defendant taking the adverse employment action. Plaintiff did send an email to the executive directors on August 9, 2019 (two hours before he submitted his notice of resignation), reporting that he had been harassed by Hanak; however, this was not protected conduct, because nothing in Plaintiff's own description of that email suggests that Plaintiff reported that the harassment was related to his race or any other characteristic prohibited under Title VII. Instead, Plaintiff described harassment related to disputes about various work matters. Plaintiff sent a second email later that day to the Acting Human Resource Director, giving his two weeks' notice that he was resigning from MHDC due to a hostile work environment and harassment by Hanak. However, even assuming that email constituted opposition to conduct prohibited by Title VII, it could not have been the but-for cause of any retaliatory adverse action, because Plaintiff submitted his resignation in that same email. Similarly, it is not plausible that Plaintiff experienced any retaliation caused by his August 12 email, which was sent after his resignation.

For all of the above reasons, the Court finds that Plaintiff has not alleged sufficient facts to suggest that Plaintiff has a plausible claim of retaliation. Thus, Plaintiff's retaliation claim with be dismissed without prejudice.

### B.  Plaintiff's Motion for Summary and Default Judgment

In his Motion for Summary and Default Judgment, Plaintiff asks the Court to render judgment against Defendant because Defendant intentionally misrepresented dates and facts in its motion to dismiss. Specifically, Plaintiff alleges that Defendant MHDC (1) intentionally misrepresented the date he filed his charge of discrimination as June 6, 2020, when it was in fact June 4, 2020; and (2) intentionally misrepresented that Plaintiff worked for MHDC until August 9, 2019, when in fact his last day was August 23, 2019. Plaintiff argues that these misstatements

were made for the purpose of making it appear that Plaintiff waited more than 300 days before filing the charge of discrimination, making his claim untimely.[6] Plaintiff argues that in light of these false statements, Defendant and its attorneys cannot be trusted not to produce discovery in this case without altering, suppressing, or destroying evidence.

In its response, Defendant acknowledges that Plaintiff filed the charge of discrimination on June 4, 2020, and states that it states that it inadvertently misstated the date as June 6, 2020. With regard to Plaintiff's last day of work with MHDC, Defendant argues that, for purposes of the statute of limitations, the relevant date is the date Plaintiff resigned (August 9) rather than the date Plaintiff's resignation was effective (August 23). However, Defendant also argues that neither of these issues are relevant to its motion to dismiss, because the failure to promote claims are untimely regardless of whether the charge was filed June 4 or June 6 and because Defendant does not argue that any claims based on Plaintiff's resignation are untimely.

Although Plaintiff's motion is styled as a motion for summary and default judgment, Plaintiff does not appear to seek relief under either the rule governing summary judgment or the rule governing default judgment. Rule 56, which governs summary judgment, requires a movant to show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Plaintiff makes no attempt to satisfy this standard in the motion. Additionally, the local rules require that motions for summary judgment be accompanied by a separately-filed Statement of Uncontroverted Material Facts that sets forth in separate paragraphs each relevant fact and how it is established by the record, E.D. Mo. L.R. 4.01(E), and Plaintiff has filed no such statement. Rule 55, governing default judgment, requires a showing that a party has failed to plead or otherwise defend and entry of default by the clerk. *See*

---

[6] 300 days from August 9, 2019, is June 4, 2020.

14

Fed. R. Civ. P. 55. Default has not been entered, and Defendant has been actively defending itself in this case. Thus, to the extent that Plaintiff does seek relief under one or both of those rules, that motion is denied.

It appears, instead, that Plaintiff is seeking judgment against Defendant as a sanction for the allegedly intentional misstatements of fact in Defendant's motion to dismiss. The Court will therefore construe Plaintiff's motion as a motion for sanctions under Federal Rule of Civil Procedure 11(c), which permits a party to impose sanctions for violations of Rule 11(b). Rule 11(b) provides, *inter alia*, that by presenting to the court a written motion, an attorney certifies that to the best of the person's knowledge, information, and belief, that "it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b). The standard for imposing sanctions under Rule 11 "is whether the attorney's conduct, 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.'" *Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1077 (8th Cir. 2017) (quoting *Clark v. United Parcel Service, Inc.*, 460 F.3d 1004, 1009 (8th Cir. 2006)). The Eighth Circuit has repeatedly advised lower courts to "consider which sanction constitutes the least severe sanction that will adequately deter the undesirable conduct." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 747 (8th Cir. 2018) (internal quotation marks omitted). A district court is given "substantial deference" in determining whether sanctions are warranted. *Willhite v. Collins*, 459 F.3d 866, 869 (8th Cir. 2006) (citation omitted).

Here, the Court finds that Defendant's misstatements do not manifest either intentional or reckless disregard of the attorney's duties to the Court and do not warrant any sanctions against

Defendant or its attorneys. First, the Court agrees with Defendant that Defendant's misstatement about the charge filing date and its alleged misstatement about the resignation date were completely irrelevant to the arguments in the motion to dismiss. Defendant's only timeliness argument was that the failure to promote incidents Plaintiff alleges in December of 2017 and February of 2018 occurred more than 300 days before Plaintiff filed the June 2020 charge of discrimination. Whether the charge was filed on June 4 or June 6 of 2020 is immaterial to Defendant's statute of limitations argument, as is the specific date of Plaintiff's last day of work. The Court does not find plausible the suggestion that Defendant intentionally or recklessly misled the Court about facts that have no bearing on the issues before the Court. The Court also notes that when Plaintiff pointed out Defendant's mistake, Defendant promptly acknowledged it and reported that it was inadvertent. The Court finds no sanctionable misconduct.[7]

### III.    CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. 14) is **GRANTED**. Plaintiff's failure to promote claims are **DISMISSED** with prejudice because they are untimely. Plaintiff's other claims are **DISMISSED**, without prejudice.

**IT IS FUTHER ORDERED** that Plaintiff's Motion for Summary and Default Judgment (Doc. 18) is **DENIED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

---

[7] In his Reply, Plaintiff also requests that the Court open an investigation and criminal complaint as to Defendant and its attorneys based on their misstatements and conduct. That request is unsupported by any legal authority or by the facts discussed above and will be denied.

Dated this 14th day of May, 2021.